My name is Douglas Farmer and I represent the appellants in this matter, Schneider Logistics, Inc. and Schneider Logistics, Transloading and Distribution. For ease of reference, I will refer to those clients as SLI and SLTD as we've done in the briefing. Issues before the court are whether it was an error of law or an abuse of discretion for the district court in its preliminary injunction to require SLTD and SLI to comply with California and federal statutory record keeping requirements. And also whether it was an abuse of discretion or an error of law for the district court in its preliminary injunction to require SLTD and SLI to place on their payroll employees of a separate company, Premier, which was a vendor of the Schneider Companies. In fact, was SLI fulfilling its obligation? Did the court assume that SLI would fulfill its obligations under these two injunctions by requiring that conduct to be done by SLTD? Was anybody really expecting that both SLTD and SLI would carry these people as employers, employees rather? The district court was expecting that to happen. The assumption was that the SLTD and SLI were joint employers with Premier and Impact, the vendors. Well, I understand that was the ruling. But what I'm wondering is if the court assumed, because the court was fairly flexible in the way it was willing to modify those injunctions, if the court assumed that SLI's obligations could be satisfied by what SLTD did. I don't know the answer. SLTD was an affiliate of SLI. SLI was the parent. Well, yeah. It's a wholly owned subsidiary of SLI. And in and of itself, that doesn't create a joint employment relationship or an integrated enterprise with the court. I don't think that's what the district court said. I think what the district court said was that SLI and SLTD were almost one entity. It was a joint employer with the people on the ground who are not before us at this point, the other two companies. The district court looked at the contract, the vendor contract, and saw that SLTD and its affiliates was a party to the contract. It assumed that an affiliate was SLI and imputed to SLI the same rights and obligations as SLTD under the contract. I don't think the district court's factual findings that underlay its joint employer determination were confined just to the contract, were they? I mean, there were a lot of declarations in the record about what actually was going on on the ground. I think that's right. They looked beyond that. And one of the factors that they did look at was a number of declarations submitted by the employees. What the court did not do, however, was to apply the standard joint employer analysis and make factual findings or findings of law in that. And that's what Bonet, which is the really controlling, Bonet and Torres-Lopez, which are really the controlling factors, will list the controlling factors in the Ninth Circuit. Right. And it applied that law to these facts, didn't it? Well, I don't think it did. It actually used the words same responsibility for the violation to determine the liability of SLTD and SLI. In other words, it never went through the four factors that Bonet goes through to determine a joint employer status. It never looked specifically at or made factual findings regarding the power to hire and terminate. Well, it didn't do so separately with regard to SLI, but it did do so with respect to SLTD, didn't it? Well, I don't know that it fully went through that analysis. We never – it never states in the order its findings regarding, as to SLTD or SLI, the power to hire and fire employees. It never goes through the supervision and control test that Bonet addresses. It doesn't address the rates and methods of payment for wages. It never addressed the obligation to maintain employment records, which is a requirement under the Bonet test. In fact, it overlooked a lot. It overlooked testimony and contractual provisions that made fairly clear that those obligations were the obligations of the vendors and not SLTD or SLI. But assuming that it's even the case that there is a joint employment relationship, the appellees have cited no case law, and we have not been able to find any, that take a joint employment relationship and essentially convert it into an integrated enterprise. In other words, take that joint employment relationship and from that place independent responsibilities on another employer to maintain record keeping, to retain a group of employees, move those employees on to their payroll. There's been no case law presented and certainly no authority under joint employment law to do that. Did anybody go back to the judge and ask for clarification on that? Because he kind of invited clarification. Did anybody say, look, would it be okay just to keep these records once by SLTD and not by SLI? On that point, I don't believe anyone went back to the court for clarification. Why was that? Why didn't you go back to there instead of just running him to the appeal? Well, I think it was the second TRO and preliminary injunction for which there was clarification that was asked. It did go to questions about ‑‑ Well, you went back and asked, well, how do we do this? And it's clear in the Ninth Circuit that the district court is not required to tell you how you accomplish it. You just accomplish it. And it seems to me that she left open in several places various alternative ways by which you could accomplish a compliance with her injunction. And certainly one of them would be to have one entity actually do the recordkeeping that obviously it's not even disputed at this point that the recordkeeping wasn't being done. Well, I don't know that she left that option open. I think the order was pretty clear. It required ‑‑ Everybody jointly liable to get this to come into compliance with the state and federal standards. And it required SLTD and SLI to provide employees with itemized wage statements and disclose all information that's required by the labor code. If the underlying companies, and I wish I could use so many acronyms here, okay, if PWV and, okay, Premier and Impact had done that recordkeeping, then Schneider and all of Schneider's obligations would be fulfilled, right? But that's not what the order said. The order ‑‑ Yeah, she said everybody's jointly liable, but one person, one entity can get it done.  Well ‑‑ I'm sorry. Go ahead. Don't you go. I don't think she did, but how is this working on the ground today? Are you getting three sets of, or at least two sets of paychecks and two sets of records, one from SLI and one from SLTD, or not? We are not. What are you doing? So today are you getting a single set? We're not getting a single set. We are getting representations from Premier and Impact that they are in compliance and assurances that they have met the requirements that appear here. But as we've seen in the past ‑‑ Are you getting no records? You're getting no records from SLI and SLTD? We're getting no records from SLI or SLTD. And is ‑‑ I'm sorry, Premier and Impact were the vendors. Yeah, of course not. But is anybody complaining to the court that those records ‑‑ So you're getting just a single set of records disclosed and today, and one paycheck from one source. Well, we're getting representations from the vendors that they are in compliance. And whose paycheck? Today on the ground. I guess I should limit this to whatever is shown in the record. It's an ongoing litigation. But what is shown in the record about whose paycheck is being sent to these employees? Well, the employees, from what we understand now, are getting wage statements as required by California Labor Code Section 226. We understand that there's ‑‑ From whom? From whom? Premier and Impact. These are the loading companies. And has there been any motion for contempt or based on a noncompliance brought against the Schneider entities? There has not. But as you can tell from the allegations in the record, the recordkeeping capabilities of these entities are not the best. And so as we sit here with this injunction, we are left only with their representations that they are in compliance with the court's order and the absence of a contempt motion from the plaintiffs to get those assurances. Well, is the litigation proceeding or has it been stayed pending these appeals? The litigation is proceeding. So you're in discovery or ‑‑ Yes. Okay. Tell me exactly what stage you're in right now. We're in a discovery stage. We've got ‑‑ it's a class action case, and so the court's going to be setting a schedule for a briefing class certification on some of the California issues shortly. But we're in the process right now of exchanging documentation in discovery. Just to look at the practicalities of it for a moment, and please correct me if my recollection of the record is inaccurate, but you've got a situation where the parties come into the court seeking a TRO. At that time, neither Schneider Logistics or Schneider Logistics Transloading were named as defendants. The court very carefully weighed the equities and went through the standards for the TRO, issued a TRO for compliance, relying on the worker declarations, the fact that the wage statements on its face were inadequate. And then at some point prior to the first preliminary injunction being issued, the complaint was amended, and that's where your clients got named, correct? Right. SLI was in the case from the beginning. The complaint was amended later, as you described, to add SLTD, yes. All right. But by the time the parties came in on the preliminary injunction issue, the TRO that was issued hadn't been complied with. And so the court then went through the joint employer analysis and setting aside whether the factual findings were adequate, said, well, I do find SL, and I'm struggling with acronyms too, Schneider Logistics Transloading, I do find that you're a joint employer, so under that contract you have the ability to ensure compliance. I'm going to add you to that, make sure it's done correctly, and as far as you know, that ended up happening. Premier and impact then started complying, as far as you're aware, correct? I think that's almost correct. I think the concern that we have is that the joint employer analysis was never articulated through the Binet factors in the court's order as we believe it should have been. So the way I read this, this whole TRO, is that the parent company, Schneider Logistics, was named in the complaint, but the plaintiffs did not know who the actual operator of the three warehouses were, and in her TRO order, Judge Schneider says, defendant Schneider Logistics is hereby ordered to identify the Schneider entity that operates that Mira Loma warehouse facility within five days, and I gather that's when the identity of the subsidiary that actually was operating the warehouse was disclosed and added to the complaint. That's right. Okay. I think I'm just about out of time, but happy to continue addressing the issues. The other bigger concern, I think, for us was the notice that was given by one of the vendors to Schneider that they no longer wanted to do business with Schneider. There was a second TRO that was filed, ultimately a preliminary injunction granted. A number of findings were made, and the obligation was placed on Schneider to, in effect, take over the workforce of the departing vendor. It created a number of problematic issues for us, including I-9 issues, immigration verification, background checks that we normally put employees through. With respect to those employees when they were first hired by Premiering Impact? We couldn't say. If they hadn't been keeping records? If it had been done by you. All we know is that there were some records in a stack that we got which showed some discrepancies in employee identifications and photographs and so forth compared to their. Isn't there an issue in the trial? You don't have a pre-trial? You haven't had a pre-trial conference report yet? Have you or have you not? For? A pre-trial conference? No, not yet. I mean, have you had a joint order yet? No. Because I would imagine that one issue in the case would be around that termination notice and whether it was a termination notice and who instigated that notice. I would assume that there's some argument that that was kind of a sham. Well, I don't think there's dispute that we did not instigate it. The question is once it happened, did we do anything to stop it? In other words, the allegation has been that because we did not act to prevent the vendor from leaving, that somehow made us jointly responsible for the retaliation that was claimed by the plaintiffs and it was the basis for the TRO. Assuming that the district court was correct in finding that Schneider Logistics transloading was a joint employer and the district court wanted to preserve the status quo to prevent the mass termination of those employees, how else could the district court have done it but in the fashion that she did? They might have done it like, I guess, like most employers do it, which is the workers would simply apply for work. Schneider and its entities would and others at the warehouse would consider those applications. Those individuals would be treated no differently than any other direct hire on the part of Schneider. How does that preserve the status quo, though, which was the district court's intent? Well, I think if those folks are not hired, which I think is the question, if they were not hired back, then certainly there's the potential for retaliation. But giving the company the option to do that as opposed to wholesale, importing an entire workforce onto their payroll based on a joint employer theory, which has never been done before, has created those logistical issues that we've talked about. And it goes beyond I-9s. It goes to benefits. I mean, we'd love to offer these folks health benefits, but there's a kind of a screening requirement that has to take place. There are background checks that need to happen. It's, you know. So we have folks on our payroll currently by order of the court that are not being treated comparably to existing employees in the sense that they've not been made subject to background checks. They've not been subject to I-9 checks. The group of employees that, I mean, this whole thing that you're claiming you were wrongfully forced to hire are people who load and unload the trailer trucks, right? Yes. The people who were existing Schneider employees at the warehouses were more. They were not loading and unloading. They were more the managers and supervisors, right? They worked in the interior of the warehouse to do things like inventory. So they're completely two different sets of employees in terms of employee description and job description. And so I don't understand. They're treated differently anyway, right? Well, with respect to pay and benefits and hourly rates and so forth. Yes, of course, with respect to almost every aspect of their employment. They're treated differently. Yes. And it is, in effect, creating a whole new job category for the company that it previously did not have in that respect. Used premiary impact to supply, right? Yes. Okay. Anyway, I think you're way over your time.  So let's hear. Thank you. Thank you, Your Honor. Michael Rubin for the plaintiffs. We have two injunctions at issue and a trial court judge who is faced with some very practical concerns. One of the things that we haven't talked about today is the irreparable harm element of the analysis. There was considerable factual support for all of our findings there. Let me focus on what we did talk about. As to the first injunction, the situation that Judge Snyder was faced with was extensive evidence showing violations of the record-keeping and payroll disclosure requirements of State and Federal law. By premier and impact. By premier and impact and whatever other entities jointly employed those loaders and unloaders, although at the time we didn't know that SLTD even existed. So the evidence that we initially submitted on our motion for TRO showed extensive failure to pay hours worked, to document piece rates, to inform the workers what the piece rates were, to keep track of what they did, and on and on. Because we didn't know who the entity working with premier and impact were, we asked Judge Snyder to order SLI, which is the only entity we knew, to identify who was operating the warehouse. SLI's secretary treasurer, Amy Schilling, submitted a declaration saying SLI has no idea who these declarants are and doesn't know who the employers of these workers are. When Judge Snyder ordered the information produced and ordered SLI to give us the contracts, we found that that very same person who was SLI's secretary treasurer was the individual who signed the contracts with premier, signed the contracts with impact as the vice president and controller of SLTD, the second entity, because she was wearing both hats, and that these contracts bound both SLTD and its affiliates, including SLI. So these entities were operating together, and there was a sufficient factual basis for her finding that they were both joint employers with the on-the-ground contractors. I got the distinct impression that that irritated the judge, and the judge felt that Ms. Snyder and others were kind of trying to hide the ball. Was there any finding to that effect? No. The finding, while that may have been a judge's normal reaction to receiving evidence after obtaining a declaration like that, she based her analysis not on any feelings about whether someone was hiding the ball, but what the language of the contract said, the fact that it included SLI's responsibility. So you're saying if she based it just on the contract that she was relying on, the statement in the contract, that this binds also the affiliates, or the... That's correct, and the fact that the affiliates have independent rights under the contract, including the right to take it on assignment. So the case stands or falls on that contract phrase, affiliates. Is that your opinion? No. It's a much narrower issue. The responsibility of the two Snyder entities, or either Snyder entity, as a joint employer, has nothing to do with that. That has to do with all the facts under all the Burnett and Torres-Lopez factors that Judge Snyder identified and that are supported by the evidence in the record. The limited issue of SLI's responsibility... She didn't go through those factors as to the Snyders with any kind of particular... Because she basically incorporated the TRO, which didn't involve the Snyders. And then she basically said, well, I've already said it, so I'm not going to say it again. Now you've got some new people for whom there's really no discrete findings on a number of those tests. That's not correct, Your Honor. At page 8, first of all, as to the first preliminary injunction, her citation to this Court's decision in Chao at page 917 for the joint employer analysis shows that when she held Snyder liable for the first preliminary injunction, whichever Snyder entity she understood was involved was because Snyder was a joint employer with premier impact. On the second injunction, which I believe is the one Your Honor is referring to, at page 8, she specifically said that the Snyder entities indirectly and directly controlled their working conditions, and then she referred to the evidence that establishes liability for joint employment under Bonnet, which is one, and I'm quoting again from her opinion at page 8, declarations from workers that supervisors from both premier, and she's referring to both entities there, as she indicated, disciplined them, terminated them, and directed them how to do their work. Those are three of the four Bonnet factors right there. And there was extensive evidence in Monsique's declaration, a dozen other worker declarations, to support that, to support the fact that Snyder specifically told the impact supervisors and the premier supervisors when to terminate someone, when to have someone work off the clock, when to perform non-piece rate work that wasn't compensated. So there's factual support for that first point. The second point is. There's no, you said there's factual evidence to that. I'm not aware of any factual evidence showing that SLI did any of that. None. SLI is distinguished from SLTD. Yes. The only, we don't know. There is absolutely no evidence that SLI did those things. There is no evidence. One common officer, Amy Schilling, but just because a common officer of the parent and the sub is acting does not mean that that officer is acting on behalf of the parent. That's correct. And, Your Honor, the. And so that's basically the only shred of evidence I know about involving SLI. Right. There are two points I make in response to that. The first is that the standard under Bonetta and Torres-Lopez is not exercise of control. It's control authority. And under the contracts, SLI has control authority because it has the same powers that SLTD has. The second fact is that this was a TRO and then a preliminary injunction before there was any discovery taken in the case. Judge Snyder acted within her discretion in determining that not only SLTD should be liable under the standards of Rule 65d. Rule 65d allows an injunction to be applied against any entity that acts in concert or participation with another entity that's responsible. If you consider the joint employment factors, the fact that she did not know what role SLI played vis-a-vis SLTD, although she did know that some Schneider entity had direct control and terminated people and directed them and set their pay scales. I mean, that's the whole thing that Bonetta and Torres-Lopez require. You can't just go around adjoining people because you don't know. There's four tests in one. And she knew that the Schneider entities, however denominated, that operated the warehouse and you're correct that the record was not clear as to what role SLA played versus what role its subsidiary played. There were only two things. One, there was a common officer shilling, and secondly, that the contract said that this also binds our affiliates. Is there anything else she has that relates to the entity SLI? That is the evidence that was before the judge as to SLI. And so no findings could have been made that were warranted beyond those two pieces of information? No, except that if there was, as there clearly was, sufficient evidence that SLTD was directly involved in terminations and discipline and all the other factors, and it was therefore appropriate to extend the injunction to that Schneider entity, then it was also within her discretion under Rule 65d, and because of the overlap and because of the contractual power of control, to extend it to SLI as well. Can you answer, does the record, just answering from the record, does it reflect who is submitting these, who's making the payments today, and who's keeping the records today for these employees? Sure. As to the impact employees, the records are being provided, the accurate pay stubs or the pay stubs are being protected by impact, and under the contract between Schneider and Impact, Schneider is requiring Impact to make those records available for it to audit them to ensure that they're correct. What about Premier? As to Premier, because Premier is no longer operating there, Schneider is paying the workers directly. Schneider who? SLTD? We don't know. The problem is, and let's go back to Amy Schilling's declaration. I think she was upset at the generality of the testimony that SLI gave. Oh, she, no. The concern that sparked the order requiring the disclosure of the contracts was that      The SLCD was not responsible. No, but not acting as an officer of SLI, acting for SLTD. SLI was a defendant in the case. She submitted that as Secretary-Treasurer of SLI. That's what her declaration says. As the Secretary-Treasurer of SLI, she said she had no idea who these declarants were and who the employers of the plaintiffs, of the plaintiffs were.  Judge Schneider learned that, in fact, there had been an active cover-up and concealment. That is sufficient under Rule 65d to conclude that SLI, no less than SLTD, acted in concert and participation. This is all about hiding the ball. This is all about making it impossible for these workers to find out how many hours they're working, what they should be paid for, what the piece rate should be, what the formula is for calculating how much they're paid. That's why Judge Schneider entered the TRO. And then when she found specifically that the TRO was not being complied with by premier or impact, she extended it based on this new evidence showing that some Schneider entity that had been hiding the ball on her was responsible because they were the ones that had the right to control. And the evidence then showed that they actually did control that they should be responsible as well, only responsible to ensure that the law was complied with, that someone kept records, that someone gave accurate pay stub disclosures. There was no requirement that every single entity, in fact, there are five different defendants, produce five separate sets of pay stub disclosures. The practical problem faced by Judge Schneider is that no one was giving these workers accurate pay stub disclosures. She required, and this goes back to the decision, Judge Wardlaw, you wrote in the Fortune case, she required the what, not the how. The what was the law must be complied with. She left it to defendants to determine how the law is to be complied with. The same holds true as to the second injunction. She did not say that the Schneider entities were required to bring these individuals onto their payroll. She said you are responsible for the retaliation. You have engaged in direct acts of retaliation. You have evidenced this by direct threats, by suspensions of workers, by forced terminations, and by taking advantage of Premier's decision to terminate the contract to clean house in a way that is contrary to your economic self-interest. You have to keep these workers on. You can do it by renewing your contract with Premier. You can do it by working with a new contractor. And, in fact, the evidence shows that Schneider did negotiate a contract with a new contractor called Roadlink, and it paid that new contractor more than it was paying Premier. But what do the workers gain by a preliminary injunction against SLI that they don't have by the injunction against SLTD? The assurance that the requirements imposed by the court will be complied with, just as they gained that assurance when the judge extended the TRO to the Schneider entities because they weren't getting compliance from Premier and IMPACT. And when you have a joint employer relationship, which the facts establish that you do, the FLSA regulations make very clear that each joint employer is severally, jointly and severally liable for every violation of the FLSA. So by having these other entities that are legally liable, you have greater assurance. And because this is all about the economic realities of a particular workplace where what they're doing is loading and unloading trucks. And Schneider, whichever Schneider entity, has set up a buffer, has set up these labor services contractors, and is, although it continues to closely supervise and direct the workers and maintains an explicit right, and that's a right that is shared by SLI and SLTD, to terminate any worker with which it is not pleased. Even though the Schneider entities maintain that right, they claim that they have no responsibility because they've said in their contracts that these are the employees of the buffer organizations, the labor service contractors. The joint employer analysis, which is essentially the same analysis under Burnett and Lopez-Torres that this Court applies and many courts apply in the independent contractor employee situation, looks to see what are the real economic realities of this workplace. Are these workers doing piece rate production work? Do they have an opportunity to profit through their own entrepreneurial skill or ability? Are you the supervising company able to control or influence their pay? Do you retain the power to terminate them? Do you retain the power to discipline them? Those facts are all set forth in these particular docket entries that Judge Schneider specifically referred to in the reference on page 8 and throughout the record before her, and show that these entities do, as a matter of economic reality, control the wages or working conditions or terms of employment, and it's a disjunctive test under State law of these particular workers. That is one factor for the preliminary injunction. Because of the deferential standard of review, what we're asking the Court is not to find, yes, as a matter of law, based on the prediscovery status of the record that was before Judge Schneider when she made these original determinations to solve a specific practical problem, that in fact at trial she will determine that all these entities do have liability. What she found, and what the Court must defer to, is that applying the four-factor test and giving appropriate deference to the trial court's findings, which are reviewed for clear error, when she balanced the likelihood of success, not that we are over your time, so I don't mean to belabor this, but I didn't see any findings about the lack of hardship to the defendants for complying. I mean, there were certainly findings about the hardship to the plaintiffs, but in terms of balancing, I saw no analysis about the hardships to SLI, or maybe    I don't know. I don't know. I don't know.   indeed induce hardship to SLI. It does apply to SLI, but maybe even SLTD, but particularly to SLI. Yes, that's actually at page 284. Initially in the TRO, it's page 284. Well, the TRO, it doesn't apply because the TRO didn't even involve SLI and SLTD. Yes, it did involve SLI. It did. And, Your Honor, her analysis is that the reason there's no hardship is that the requirements that she was imposing didn't go beyond the law. The TRO and the preliminary injunction simply said, you must comply with state and federal recordkeeping and disclosure requirements. And she said, there's no burden on an employer. They have to do that anyway. And she determined they were employers. How did you come up with SLI when you filed your complaint and sought the TRO? When we did a web search, that was the entity that we found. And we explained that to – As associated with these three warehouses. Yes, yes. What is – most of these goods and the trucks, are they going to Wal-Mart or not? A hundred percent. So it's all – well, they must be getting really busy now that Wal-Mart's going to same-day delivery, huh? This is the – this is the – well, and, Your Honor, this is the – this is what they call the blitz season. It happens that these go a hundred percent to Wal-Mart. The reason we had such extraordinary violations, the reason workers testified about working 28 days in a row, 16 hours a week during certain periods of the year, is that during the blitz season, the two or three months before the Christmas season, there's an incredible number of trucks that come in and come out. Wal-Mart tells Schneider. Schneider tells the workers. The reason we have reporting time violations – and this is the last point I think I'll make – is that the contracts that SLI and SLTD imposed on Premier and Impact say, we're going to give you one day's notice of how many trucks are coming in and how many people – so you're going to have to figure out when a truck comes in, you have to have enough workers for us so that these trucks can be completely loaded and completely unloaded same day. That means that the labor service contractors have to bring in far more workers than they're actually going to use because they have – they're contractually required to complete a truck. If a worker shows up and isn't given work under California law, they're entitled to be paid at a minimum of two hours' wages. No one got those two hours of wages. That was directly a consequence of the contractual imposition by Schneider on those workers. Many of the violations – the piece rate violation, again, is a direct reflection of the contractual terms because the contracts pay Premier and Impact on a per container loaded and unloaded basis, which is the precise way the labor service contractors paid the workers. There was a pass-through. Again, that's responsible. I think you're way over at this point, so thank you very much. Thank you. Carrillo v. Schneider Logistics is submitted, and the Court will stand in recess briefly.
judges: Ebel, Wardlaw, Nguyen